No. 15,222.

BENNETTS, INC. *v.* CARPENTER, DIRECTOR OF REVENUE.
(137 P. [2d] 780)

Decided April 26, 1943.

64

Mr. John R. Coen, Mr. W. Richard Means, for plaintiff in error.

Mr. Gail L. Ireland, Attorney General, Mr. H. Lawrence Hinkley, Deputy, Mr. Duke W. Dunbar, Assistant, Mr. George K. Thomas, Assistant, for defendant in error.

*En Banc.*

Mr. Justice Burke delivered the opinion of the court.

This is an action under sections 78 to 92, chapter 93, '35 C.S.A. (Rule 57, R.C.P. Colo.), for a declaratory judgment. The parties appear here in the same order as in the trial court and are referred to as there, or as the Restaurant Company and the Director respectively. The Remington Arms Company is referred to as the Arms Company.

The questions presented are the duty of the Restaurant Company to collect a sales tax on meals served at its cafeterias within the plant of the Arms Company and its liability for such taxes as it failed to collect. The Director held against plaintiff on both points and to

obtain a declaration of its rights and status under the statute it brought this suit. The district court sustained the ruling of the Director and entered judgment accordingly. To review that judgment the Restaurant Company prosecutes this writ and specifies eight alleged errors. These amount only to the assertion that the judgment is unsupported by the evidence. That evidence, so far as material to our conclusions, is undisputed.

1. In the plant of the Arms Company are three zones all entrances to which are guarded. Admission to each is at the option of the Arms Company which issues all passes. Permits for zone 1 are somewhat liberal, for zone 2 much restricted, and for zone 3 still more so. The Arms Company is a contractor under the United States and the Restaurant Company is subcontractor under it. All cafeterias are in zones 2 and 3. All persons admitted to them, numbering approximately 10,000, may, but need not, patronize the cafeterias. All these persons reside outside the plant. Plaintiff there serves from 12,000 to 14,000 meals daily.

The applicable statute is subsection (c) of section 4, chapter 144, '35 C.S.A. which provides for: "A tax equivalent to two (2) per cent of the amount paid for all meals and cover charges, if any, furnished at any restaurant, eating house, hotel, drugstore, club, resort, or other place at which meals or food are regularly served to the public." The position of plaintiff is that its cafeterias are not places "at which meals or food are regularly served to the public." In support thereof it relies upon Webster's difinition of "public," and numerous precedents construing that word or phrases containing it, under varying facts. For example: Roller towels in locked lavatories, kept for the use of tenants of an office building, are not used "in any public lavatory." *Irvine v. Commonwealth*, 124 Va. 817, 97 S.E. 769. An ordinance forbidding soliciting, without license, "upon the street or in public places" has no application

to "homes, private offices and factories." *Madison Products Co., Inc. v. Coler,* 242 N. Y. 467, 152 N.E. 264. A garage used for the storage of automobiles belonging to tenants of a certain building is not a "public garage." *Pratt v. Denver,* 72 Colo. 51, 209 Pac. 508.. Also the following, among others, holding, in substance, that the test of "public use" is "whether the public may enjoy it by right or by permission only." *Neitzel v. Spokane Inter. R. Co.,* 65 Wash. 100, 117 Pac. 864; *State v. Welch,* 88 Ind. 308; *Railroad Com. v. S. L. S. W. Ry. Co.,* 35 Tex. Civ. App. 52, 80 S.W. 102; *Market Co. v. Railroad Co.,* 142 Pa. 580, 21 Atl. 989. Also others holding that where certain places are specifically named, preceding designation of the place in question, or preceding the words "public," "the public," "other place," etc., the rule of ejusdem generis applies. *People v. Powell,* 280 Mich. 699, 274 N.W. 372. We think analysis unnecessary to demonstrate that all these are unconvincing.

 The word "public," like so many others, must be interpreted in each case according to use and intent. It will not do to say that any test laid down in the foregoing is final and infallible. Many fact combinations can be suggested to which, by the common understanding of mankind, the word is applicable, whereas, tested by any or all of these definitions we would be obliged to substitute "private." The very statute before us contains a recognition of the correctness of this statement. It lists among the taxable places a "club." Under the foregoing authorities the establishments ordinarily suggested by that name would be private. Moreover, applying here the rule of ejusdem generis as counsel insist we should, we find the Legislature regarded such clubs as public.

 But all this aside it occurs to us that, considering the unquestioned purpose of the statute and the extent of the service and patronage of these cafeterias, a former quotation by this court in a case presenting the identical question, but involving a different enterprise,

is peculiarly applicable. "The public does not mean everybody all the time * * * The proportion of the public served is so large as to be the public." *Davis v. People ex rel.,* 79 Colo. 642, 247 Pac. 801. Modifying an illustration used in that opinion to fit the situation here we would say—If the Arms Company had issued a blanket pass to all its officers and employes, another to all commissioned officers of the U. S. military service, another to all persons having business with the company, and another to 200 persons specifically named, these being all persons accessible to the cafeterias and available as patrons, save A and B (thus accomplishing the same result as a simple order excluding A and B) and then insisted that such limitation converted an otherwise public into a private cafeteria "the contention would be so absurd as to be instantly rejected. But the reasons for that rejection would be the identical reasons which demand rejection of defendant's [plaintiff's] contention in the instant case." *Davis v. People, supra; Terminal Taxicab Co. v. Kutz,* 241 U. S. 252, 36 Sup. Ct. 583, 60 L. Ed. 984; *Rural Elec. Co. v. Bd. Equalization,* 57 Wyo. 451, 120 P. (2d) 471. The Restaurant Company is subject to the tax.

2. November 27, 1941, the Director wrote counsel for the Restaurant Company as follows: "If, as you say, neither the meals nor food is regularly served to the public at this plant, but your sales are restricted to employes or other licensed persons who have a permit to be on the grounds so that the trade could not be classified as 'the public,' then your client would not be liable for a sales tax on the meals sold." February 16, 1942, he wrote that the "concession at the Arms plant would be expected to collect sales tax from all patrons of the cafeterias, the same as other eating houses and restaurants." February 24, 1942, he wrote the Restaurant Company that an assessment had been made against it for delinquent sales tax in the total sum of $2,810.66 for the months of October, November and December, 1941, and

January, 1942. These were taxes uncollected by the Restaurant Company from its patrons at the cafeterias, and for which, under the statute, it became liable. Its position is that it did not collect them because of reliance on the Director's letter of November 27, above quoted. That such reliance was justified and hence constitutes a sufficient defense to the Director's claim for said delinquent taxes counsel cite and rely upon *Pratt v. Denver*, 72 Colo. 51, 209 Pac. 508. At first glance it would seem this position has merit and certainly a contrary rule not infrequently results in some measure of injustice, notwithstanding which, stern necessity has compelled its universal adoption. Were it otherwise the state's servants could waive most of her revenue. "It is a general principle of law that the doctrine of estoppel can not be invoked against any governmental agency, acting in its public capacity." *McKay v. Utilities Com.*, 104 Colo. 402, 91 P. (2d) 965. Again we recently applied the rule in a case identical in principle with this now before us. *Armstrong v. Driscoll Co.*, 107 Colo. 218, 110 P. (2d) 651.

We are forced to the conclusion that the Restaurant Company is liable for the uncollected tax.

The judgment is affirmed.