In re ASSESSMENT OF CHAMPLIN REFINING CO.

*99 P. 2d 880.*

No. 27506.  Feb. 6, 1940.

Rehearing Denied March 5, 1940.

Nathan Scarritt and E. S. Champlin, both of Enid, for appellant.

Roy Holbird and Hugh Conway, both of Enid, for appellee.

Amici Curiae Brief:

Victor C. Mieher, of Tulsa, for Amerada Petroleum Company.

M. D. Kirk, of Tulsa, for Barnsdall Oil Company.

James A. Veasey and Lloyd G. Owen, both of Tulsa, for Carter Oil Company.

George C. White, for Cushing Refining & Gasoline Company.

W. F. Semple, for Deep Rock Oil Company.

Simons, McKnight, Simons, Mitchell & McKnight, of Enid, for Eason Oil Company.

Hayes McCoy, for Empire Oil & Refining Company.

W. P. McGinnis and Fred M. Carter, for Indian Territory Illuminating Oil Co.

B. B. Blakeney, of Oklahoma City, for Magnolia Petroleum Company.

R. H. Wills and James C. Denton, both of Tulsa, for Mid-Continent Petroleum Company.

Roscoe C. Gwilliam, of Houston, Tex., for Ohio Oil Company.

Alvin Richards, of Tulsa, for Pure Oil Company.

Joe T. Dickerson and Geo. W. Cunningham, both of Tulsa, for Shell Petroleum Corporation.

E. H. Chandler and Summers Hardy, both of Tulsa, for Sinclair Prairie Oil Company.

W. P. Z. German and Alvin F. Molony, both of Tulsa, for Skelly Oil Company.

Y. P. Broome, of Tulsa, for Tidewater Oil Company.

WELCH, V. C. J. On January 1st of the year involved, the taxpayer, referred to as "Champlin," owned certain crude oil in storage in Garfield county. The county assessor assessed it as of that date for subsequent ad valorem taxation, and in due course after the following July 1st the regular ad valorem tax was assessed or levied or extended against the valuation of this oil, as against all other taxable property in the county.

Champlin, by proper proceedings, sought to cancel the assessment as to

this oil, and now appeals from the adverse judgment of the district court.

This oil was assessed under the general statute (section 12581, O. S. 1931, 68 Okla. St. Ann. § 81), and the tax subsequently levied against it was legal and proper unless it was nontaxable and exempt by reason of the provisions of section 12434, O. S. 1931, 68 Okla. St. Ann. § 821. That section provides in effect that:

"The payment of the taxes herein imposed (referring to the gross production tax) shall be in full and in lieu of all taxes by the state, counties, cities, towns, townships, school districts and other municipalities upon * * * leases for the mining of * * * petroleum or other crude oil or other mineral oil * * * and also upon the oil * * * during the tax years in which the same is produced. * * * but * * * oil in storage * * * produced and on hand at the date as of which property is assessed for general and ad valorem taxation for any subsequent tax year, shall be assessed and taxed as other property within the taxing district in which such property is situated at the time."

Further material facts are that this oil was produced in November and December preceding the January 1st assessments, and the gross production tax thereon (section 12434, supra) was paid. By reason of that payment and the portion of the statute quoted supra, Champlin urges its contention above stated, that the oil was nontaxable and exempt from the ad valorem taxes levied and extended against it.

It would seem clear from reading the quoted act that oil in storage on January 1st of any year is properly assessed for general ad valorem taxation for the next suceeding fiscal year, beginning the following July 1st, regardless when, before January 1st, the oil was produced and the production tax thereon paid. That has been the long continued administrative construction as to state, county, and school district taxes, though the identical question, for lack of controversy thereon, has not before been considered by this court.

Champlin urges that this construction violates the legislative intent and leads to absurd consequences and reduces the legislatively intended exemption. It is urged that the intent of the Legislature since the 1916 enactment, containing the above quoted language, was expressed thereby to be that oil produced on and after July 1st, and up to and including December 31st, should all be exempt from assessment on the following January 1st. That is to say, that such oil could not be assessed at all unless it was kept on hand for the full period of from one year to 18 months, or until the second annual assessment date after production and storage. No such intention is expressed in the act. If such legislative intention had existed in 1916, it could then have been easily and definitely expressed. Likewise, at each biennial legislative session since that year, such intention could have been expressed by an enactment, if so intended and desired. That has not been done.

As to the contention of resultant absurdity, we can only observe that since statehood it has been deemed advisable and economical and necessary to have one fixed annual assessment date. Thus it may be that in many instances property which only became subject to assessment on December 31st was assessable and was assessed on January 1st, and bore its full burden of taxation for the next succeeding fiscal year, while other property which only became subject to assessment on and after January 2d, was not assessable nor assessed as of January 1st, and therefore bore no burden of taxation for the ensuing fiscal year. Whatever absurdities do or might thereby result, when viewed through the eye of equity or measured by the equities of ownership, must be held to be dispelled or overcome by the necessity for a fixed assessment date. When after July 1st the taxes for counties and municipal subdivisions are levied and assessed, they are based on the property assessments of the preceding January 1st. The necessity of having a previously fixed assessment valuation, on which to base tax levies, is readily apparent in view of the ad valorem tax system. Many items of personal property assessed on or as of January 1st may no longer be in

existence when after July 1st the taxes are levied on the valuation of that personal property, and that might as well be thought to be absurd, as being a tax levied or assessed against nonexistent property. We find no controlling merit in this contention that absurd result follows the construction which we place on the language of this act.

This act must be construed according to its plain language, and so as to give effect to all of its provisions. That is, we should construe it so as to give full effect to the provision that the payment of the gross production tax shall be in full and in lieu of other taxes during the year in which the oil is produced. But we must also construe this statute so as to give full effect to the other provision, that oil placed in storage and there retained until the following January 1st shall be then assessed for general and ad valorem taxation for the subsequent fiscal year, as in the case of other property subject to such assessment for taxation.

In so doing we give effect to the legislative intent as expressed in the act. Any other or different legislative intent must be adopted and expressed by the Legislature before it can obtain, or be followed to any such change in the assessment and taxation of oil in storage as is sought to be inaugurated by Champlin in this case.

For prior decisions containing the general rules of statutory construction which we follow here see Falter v. Walker, 47 Okla. 527, 149 P. 1111; Pasley v. Bank, 137 Okla. 171, 278 P. 621; First National Bank v. Mills, 134 Okla. 186, 272 P. 840; In re Martin's Estate, 183 Okla. 177, 80 P. 2d 561; McCain v. State Election Board, 144 Okla. 85, 289 P. 759; Atchison, T. & S. F. Ry. Co. v. Myers, 114 Okla. 240, 246 P. 395.

The trial court was correct in denying the relief sought by this taxpayer, and that judgment is affirmed.

BAYLESS, C. J., and RILEY, CORN, and HURST, JJ., concur. GIBSON and DANNER, JJ., dissent. OSBORN and DAVISON, JJ., absent.

GIBSON, J. (dissenting). The one question presented is whether crude oil produced in November and December of a given year and subject to gross production tax (ch. 103, S. L. 1933) is assessable ad valorem for the fiscal year 1935-1936 when the same is found in storage on the following January 1st.

Section 5 of said chapter 103, S. L. 1933, provides in part that the gross production tax therein imposed "shall be in full and in lieu of all taxes by the state, counties, cities, towns, townships, school districts and other municipalities * * * upon leases for the mining of * * * petroleum or other crude oil * * * and also upon the oil * * * during the tax year in which the same is produced. * * *" The section further provides as follows: "but any interest in the land other than that herein enumerated, and oil in storage, * * * produced and on hand at the date as of which property is assessed for general and ad valorem taxation for any subsequent tax year, shall be assessed and taxed as other property within the taxing district in which such property is situated at the time." The parties have treated the oil as being in storage on January 1, 1935, the date as of which property was assessable for ad valorem taxation for the tax year 1935-1936 (sec. 12581, amended, sec. 1, ch. 115, S. L. 1933; 68 Okla. Stat. Ann. § 81; In re Sinclair Prairie Oil Co., 175 Okla. 289, 53 P. 2d 221).

The taxpayer seeks a construction of the aforesaid statute with reference to when the oil shall again be subject to taxation, saying at the outset that the Legislature intended thereby to exempt crude oil from ad valorem taxation for a certain tax year, and that the same should again be subject to taxation subsequent to the year to which the exemption applies. It is here asserted that the county assessor claims the oil is exempt from assessment ad valorem only on the January 1st next preceding production, and the taxpayer claims the same exempt from such assessment the January 1st following production, and when such production takes place subsequent to July 1st of the preceding calendar year.

An examination of the statute dis-

closes without chance of controversy that the Legislature intended to excuse the oil itself from ad valorem assessment for at at least one tax year. This is shown by the fact that the gross production tax is imposed upon the oil and is *in lieu* of all other taxes, except for such subsequent years as it may be in storage. Thus for some one tax year it maintains its separate classification, i. e., during the tax year in which it is produced. Since the taxpayer is given the right to have determined in any one year whether or not his gross production tax will exceed what would otherwise be an ad valorem tax, he has the right to have fixed first of all the January 1st upon which the ad valorem tax would otherwise be assessable. Only in that way can it be determined whether he is obtaining that equality of taxation that the law contemplates.

Respecting this right of the taxpayer to have an equitable adjustment under the statute, this court said:

"From this it is clear that the Legislature had no other object than to levy a 'property tax' upon mining property according to its fair cash value, using the measure therein adopted for ascertaining such value, and providing the means therein provided for correcting any mistakes which might result from overvaluation or excessive rate. * * *

"While the board of equalization has no power to lower the valuation, it does have the power and it is expressly made its duty to lower the rate, which has the same effect. The valuation, it will be observed, is largely, and in most cases wholly, made upon the sworn reports of the mine operator. It was therefore unnecessary to give the board authority to lower the valuation, but was necessary to give it power to lower the rate so as to make it exactly conform to the general 'property tax' levied upon other property upon the basis of its fair cash value. * * *

"The statute provides, further, that if any of such products remain unsold and in the state for the *succeeding tax year,* they shall then be assessed as other property upon the general ad valorem basis." (Emphasis ours). In re Skelton Lead & Zinc Co.'s Gross Production Tax for 1919, 81 Okla. 134, 197 P. 495.

It cannot be doubted that this remedy given the board or the taxpayer was an attempt to meet the equality clause of the Constitution. In a proceeding brought under this section this court held:

"It was clearly the duty of the board to hear * * * evidence * * * for the purpose of ascertaining the *amount of taxes* that the appellant *would have been liable to pay on an ad valorem basis.* And if it found that the taxes imposed were greater or less than the general ad valorem tax, it became its duty to raise or lower the rate in order to make the taxes imposed conform to an ad valorem basis. * * *

"It will be observed that the duty of the board is not so much to ascertain the precise value of the taxpayer's property as it is to determine whether *the taxes* imposed are *greater or less than they would be* if levied on an ad valorem basis. * * *" (Emphasis ours.) Exchange Oil Co. v. State, 80 Okla. 52, 193 P. 999.

"* * * The sole object of the Legislature was to adopt a practicable means for ascertaining the fair cash value of these smelting plants and equipment 'as going concerns,' and to levy a 'property tax' thereon according to such value. * * *

"From this it is clear that the Legislature had no other object than to levy a 'property tax' upon mining *property according to its fair cash value,* using the measure therein adopted for ascertaining such value. * * *

"* * * The validity of a 'property tax' * * * is determined by the law governing its rate, its *uniformity,* its reasonableness or excessiveness, or whether it is *discriminatory* or confiscatory, or whether the manner of its assessment and collection is regular or irregular or constitutes 'taking without due process of law,' or amounts to 'denial of *equal protection* under the law.' * * * (Emphasis ours.) In re Skelton Lead & Zinc Co.'s Gross Production Tax for 1919, 81 Okla. 134, 197 P. 495.

See, also, State v. Indian Royalty Co., 177 Okla. 238, 58 P. 2d 601. In this case we said further:

"The gross production tax statute amounts to a classification of property for taxation. * * * It has placed the prop-

erty here within the class therein described, and it was in that class on January first in each of the years involved herein. Its taxable status was fixed as of those dates. *Being subject to the gross production tax on those dates*, it was not susceptible, on those dates, of being classified for ad valorem assessment for the succeeding fiscal years.

"In re Sinclair-Prairie Oil Co., 175 Okla. 289, 53 P. 2d 221, we said: * * * 'The taxable status of property for the purpose of assessment for ad valorem purposes is fixed and determined as of January 1st, and the machinery, appliances, and equipment used in the production of oil and subject to gross production tax on January 1st of any year are not subject to assessment ad valorem for taxes for the *succeeding fiscal year.*' "

Note the theory in these latter two cases: That the property mentioned, being "subject to gross production tax" on those dates (January 1), it was not susceptible, on those dates, of being classified for ad valorem *assessment* for the *succeeding fiscal* years; and so long as oil or gas is produced and the gross production tax paid thereon, the property therein mentioned retains its classification. *But oil is within such classification only once.*

In determining, therefore, whether oil on hand on any particular January 1st is taxable for the ensuing fiscal year, we must necessarily determine whether the "lieu" tax has been assessable and payable on it for that period of time; if it has, it follows, of course, that if it is also assessed ad valorem, an excessive or double tax would result, a violation of the clear intent of the statute, and of course a denial of that equality which the Constitution requires. Further, if the tax is in "lieu" of ad valorem taxes, it is clear that if the gross production tax has been assessed, ad valorem taxes cannot be assessed for any period covered by the gross production tax.

Although we have said in previous cases that the Legislature has adopted a "practicable means" for measuring the value of the property, the law is not too clear as to how the adjustment can be made to make the tax conform to an ad valorem tax which "would be on the property" if the gross production law did not exist. This involves, among other things, the question of what date should be taken as the date at which the property otherwise would be valued. Is it the January 1st just before the production, the January 1st just succeeding, or the January 1st next thereafter succeeding? An attempt to apply this provision to a concrete case will at once present difficulties, some not readily solvable. We are here concerned with this provision solely in attempting to determine of which year's assessment said tax is "in lieu."

In the Sinclair Prairie Oil Company Case, supra, the question involved was whether oil produced and on hand January 1st was assessable for taxation as of that date when it had been assessed for the gross production tax and gross production tax paid during the fiscal year in which such January 1st occurred. The oil there sought to be taxed was held not to be in storage within the meaning of the statute, but the principles upon which that case was based are controlling here, especially if we consider the provisions of the statute in reference to the "in lieu" nature of the tax and the right of a taxpayer under such provisions to an adjustment. We consider some of the reasoning in the Sinclair Prairie Oil Company Case. Declarations for consideration here are these:

"The question, therefore, is not one of tax exemption, but one of ascertaining the identity of the property taxed under the gross production tax statute and the identity of that not so taxed. Such property as is taxed by the act *is taxed for all purposes.* * * *

"While the act does not provide that the taxes so levied shall be in lieu of all taxes thereafter to be levied, yet it does definitely fix the condition upon which oil may be assessed thereafter for ad valorem taxation, and that condition is, when the oil is found in storage (and on hand at the date as of which property is assessed * * * for any subsequent tax year). The Legislature has in effect said that the oil is not freed from the operation of the statute until it is placed in

storage, and assessment for ad valorem taxation is definitely postponed and restricted to that time. * * *

"The Legislature has not seen fit to enact laws authorizing *ad valorem assessment of oil produced between annual assessment dates*. * * * The gross production tax statute has provided a plan whereby certain property moving in regular commercial channels m a y b e reached by a direct property tax. * * *

"We therefore conclude that the oil in question was not subject to assessment for ad valorem taxation on January 1st of the years mentioned, for the reason that the time for such assessment as fixed by sections 12434, 12606 and 12581, O. S. 1931, had not arrived on said day." (Interpolation ours, to explain the meaning in accordance with the word of the statute.)

If we consider the meaning and intent of the statute taken as a whole, there is no distinction between the taxability of the oil there under consideration and the oil under consideration here, so far as permitting assessment for ad valorem taxes as of the 1st January ensuing after production. In each case the oil immediately upon production became assessable and taxable under the gross production tax law. In either case were it not for the gross production tax law the oil on hand January 1st would be personal property, taxable as other personal property. In the one case the oil is not relieved of the ad valorem tax because it happens not to be in storage, but is relieved of the tax because it is subject to the gross production tax in lieu of the ad valorem tax for which it would otherwise be assessable; in the other case the same rule must apply to the situation, so as to relieve the oil in storage from assessment on the same assessment date as if it were not in storage. In other words, the tax must be in lieu of the tax that would be assessed on the same assessment date in each case. It is not conceivable that the *in lieu* nature of the tax would be applied as of one assessment date in one case and not the other. From two wells side by side oil might be produced, from one of which it would go into storage, and from the other only tem-porarily into tanks "in course of production." As to the year to which the "in lieu" provisions would apply there can be no distinction. That the "in lieu" provisions of the act take the oil from liability for ad valorem taxes for one year cannot be doubted. The reference in the statute to a "subsequent year" clearly impels this conclusion, as well as the intent, purpose, and wording of the whole statute. We are compelled to give force also to the provision of the act which gives the taxpayer the right to an adjustment before the equalization board.

The only practicable assessment date usable, in order to get the adjustment to which the state or taxpayer is entitled, is the assessment date occurring during the fiscal year in which the production is had. This will appear clear from the following illustrations:

Were it not for the gross production tax law, oil produced during a calendar year would not be taxable unless on hand January 1st, at the close of the calendar year, unless it were placed in the category of goods, wares, and merchandise where the average on hand during a calendar year furnishes the basis of the assessment as of January 1st, next ensuing. Either in that case or as in cases of other personal property where the amount on hand as of January 1st is used as a basis, the assessment would be as of January 1st, for an ad valorem tax payable in the future; so that in making an adjustment to prevent the gross production tax from being excessive, if the board should take the theory that the gross production tax paid should be equalized with the ad valorem taxes of the fiscal year during which the gross production tax was paid, it would invariably find that it must abate entirely the tax on oil produced after July 1st and before December 31st (as well as for other periods), for the reason that the oil unproduced had no taxable existence of any kind on the previous January 1st, hence would not have been subject to ad valorem taxation.

The practical effect of the gross production tax law is to make an immedi-

ate assessment and to levy the tax as the oil is produced, followed at once by the collection of the tax, instead of waiting a period of months for assessment and collection of the tax. The date of collection of tax has no determining force on the question here as to whether the property is twice assessed, or assessed in the same year for a double tax. Since, therefore, the assessment is in effect immediate upon production and is made during the fiscal year and the gross production tax is levied thereon as production occurs, it would amount to a double assessment and consequent double taxation to permit the oil to be assessed again during the fiscal year in which it is produced. It follows, therefore, that oil, produced during a fiscal year and thereby immediately assessed for gross production tax purposes, although on hand January 1st of the fiscal year within which it is produced, cannot be assessed for ad valorem tax purposes as of that January 1st.

I therefore respectfully dissent.

Mr. Justice DANNER concurs in these views.