RUPP et al. v. CITY OF TULSA et al.

No. 33605. Jan. 31, 1950.
Rehearing Denied Feb. 21, 1950.

*214 P. 2d 913.*

John R. Woodard, of Tulsa, for plaintiffs in error.

Kulp, Pinson, Lupardus & Kothe, of Tulsa, for defendants in error Layman & Company and Central Surety & Insurance Corporation.

R. L. Davidson, Jr., of Tulsa, for defendants in error City of Tulsa, the Mayor and Board of Commissioners, and S. Maxwell Smith, City Auditor of the City of Tulsa.

Carter Smith and B. C. Franklin, both of Tulsa, amici curiae.

GIBSON, J. This is an action to enjoin the city of Tulsa and its officers from assessing the cost of street improvement against property benefited thereby. Upon the trial defendants were awarded judgment, and therefrom the plaintiffs prosecute this appeal. Herein the plaintiffs in error and defendants in error will be referred to as plaintiffs and defendants, respectively.

On June 27, 1947, the board of commissioners of the city of Tulsa, Okla., on authority of section 1, article IX of the City Charter, adopted a resolution declaring the necessity for providing for the improvement by grading, paving, guttering and draining the following described portions of streets in said city, designated improvement district No. 1142:

"Sandusky Avenue: From the South Line of 11th Street to the North Line of 15th Street; Toledo Avenue: From the South Line of 11th Street to the North Line of 13th Street; Winston Avenue: From the North Line of 14th Street to the North Line of 15th Street; 13th Street: From the East Line of Sandusky Avenue to the West Line of Winston Avenue; 13th Place, 14th Street, and 14th Place: All from the East Line of Sandusky Avenue to the West line of Winston Avenue; And Urbana Avenue: from the South Line of 11th Street to the North Line of 15th Street."

On December 23, 1947, the board, having theretofore let the contract for making said improvements, and the city engineer, having submitted a written statement of the estimated cost and the proportion and amount thereof to be assessed against each of the lots benefited thereby, by resolution approved said statement, declared its determination to assess the costs of the improvements as set out in said statement, directed that notice thereof be given the owners of such lots by publication in Tulsa Daily Legal News for five (5) consecutive days, beginning on December 23, 1947, and by registered mail as provided in section 7, art. IX of said Charter, and set January 2, 1948, at 10 o'clock a. m., for the hearing of any and all objections to the proposed assessments.

On said January 2nd, and before the hour of 10 a. m., plaintiffs filed their written protests against the proposed assessments, and on their motion the hearing thereon was continued until

January 9, 1948. In the meantime, plaintiffs, by way of amendment, filed additional protests. At the hearing on said January 9th all of said protests were considered and by the commission overruled, and thereafter this action was instituted. The issues made by the pleadings will be sufficiently reflected in the discussion of the grounds urged for reversal.

The first ground, stated in Proposition No. 1, is as follows:

"Because the judgment complained of is contrary to law in that the Mayor and Board of Commissioners, under the provisions of the City Charter, had no power to create a paving district consisting of more than one public way and to make assessments against any abutting property."

The contention is founded upon the use of the singular in the Charter provisions authorizing improvements of the character here involved. There is quoted from section 1, art. IX, the following:

"When the Board of Commissioners shall deem it necessary to grade, pave, macadamize, gutter, drain or otherwise improve any street, avenue or alley or any part thereof, within the limits of the city, for which a special tax is to be levied, as herein provided, said board shall by resolution declare such work or improvement necessary to be done,"

and it is asserted that the words "street, avenue or alley" appear at least twenty times in the article dealing with street improvements, and in each instance are used in the singular. Tit. 25, O.S. 1941 §25, which provides: "Words used in the singular number include the plural, and the plural the singular, except where a contrary intention plainly appears," is recognized, but it is urged that the repeated use of the singular is sufficient to demonstrate clearly that it was the intent of the Charter to limit the improvement district to a particular street or portion thereof. And, as authority for such conclusion, there is quoted from section 85, Tit. 11, O.S. 1941, the following:

"Any number of streets, avenues, lanes, alleys or other public places, or parts thereof, to be improved, may be included in one resolution; but such protest or objection shall be made separately as to each street or other way, and where parts of a continuous street or way are to be improved, such protest or objection must be filed against the entire street or way so to be improved."

It is the use of the singular without there being anything in the context or overall purpose of the article to limit the meaning of the words thereto that makes section 25, supra, applicable. The mere repetition of such use, instead of detracting from, emphasizes the application of the last-cited statute. In order to avoid the plural sense accorded by the statute a contrary intention must plainly appear, and it cannot be made to so appear merely by the repeated use of the singular.

Tit. 11, O. S. 1941 §85, supra, could have persuasive force only in event the effect thereof is to limit an improvement district to a single street. In the first place, it does not necessarily follow that the improvement district is to be limited to a single street because of the statutory provision that protestants are required to file their objections to each separate street, and there is cited no authority so holding. Many reasons why the district should not be so limited in the instant case could be stated, but it is unnecessary to do so since it is clear the rule declared in the statute can have no application herein.

The apparent plausibility of the application of the rule is due solely to the fact of the severance of the section from its context. Under the law to which it relates (Tit. 11, O. S. 1941 §81 et seq.) the power of the city to make such improvements was subject to the veto of those owning more than one-half of the area of land liable to assessment therefor. And the manifest purpose of the rule is to confine the exercise of the veto to the area where the protestant's right is involved. Here-

in, the owner of property involved is endowed with no right to veto or curtail the power of the city under its Charter to create improvement districts, to consummate the improvements contemplated, and to assess the cost thereof against the property benefited. City of Tulsa v. Weston, 102 Okla. 222, 229 P. 108. Apart from the protestant's right to question the validity or regularity of the proceedings, his right is declared in that case (while construing section 7 of art. IX of said Charter), as follows:

". . . There is no provision in the section, taken with the other sections, which can be given fairly any meaning other than that the protest and objection provided for goes solely to the individual, and the proportionate benefits touching his property in the district."

The determination of what shall constitute an improvement district is a matter that is addressed to the legislative discretion of the city and such determination affords no ground of protest by a property owner other than to the extent the right of the protestant is impaired by an improper exercise of such discretion. Herein there is no evidence of either improper exercise of discretion or impairment of any right.

The second ground, presented as Proposition No. 2, is:

"Because the judgment complained of is contrary to law in that the property owners affected were not given the required and requisite notice of hearing prescribed by the Charter."

The objection is directed to the publication of notice of the hearing to be had at 10 a. m. of January 2, 1948. The Charter provides "The time set for such hearing shall be not less than ten days from the time of the first publication of such notice." The notice was published in the Tulsa Daily Legal News. The first publication appeared in the issue of December 23, 1947, which came off the press about 6:30 p. m., and, beginning immediately thereafter, distribution to customers was had through delivery by carrier and by deposit in the mail. Plaintiffs contend the notice is insufficient because the full period of ten days could not elapse between the hour of publication (6:30 p. m.) on the 23rd day of December, and the hour (10 a. m.) set for the hearing on January 2nd. Defendants contend that since under authority of Tit. 12, O.S. 1941 §73, the computation is to be made by excluding the first day (December 23rd) and including the last (January 2nd) the requisite ten days' notice obtained. And it is further contended that defendants by their conduct waived their right to urge absence of jurisdiction to make the assessment by reason of the insufficiency, if any, of the notice. In our opinion defendant's second contention must be sustained, and therefore it is unnecessary to consider the question of the legal sufficiency of the notice given.

We deem it manifest from what has been said that the prescribed notice is required solely for the protection and benefit of the property owners affected by the improvement. The law pertinent to such situation is thus clearly stated in Sentenis v. Ladew, 140 N. Y. 463, 35 N. E. 650, 37 Am. St. Rep. 569:

" . . . But a party may waive a rule of law or a statute, or even a constitutional provision enacted for his benefit or protection, where it is exclusively a matter of private right, and no considerations of public policy or morals are involved, and having once done so, he cannot subsequently invoke its protection."

Citing that case and others in support thereof, it is said in McQuillin, Municipal Corporations, Revised vol. 5, p. 232, sec. 1996, as follows:

"Notice to landowners of the proposed improvement may be waived, particularly where the owner appears at the hearing and fails to object or protest, or does other acts tantamount to an estoppel in pais. Likewise, although the notice be defective, such jurisdictional objection may be waived, and in Illinois is waived by filing fur-

446

ther objections to the confirmation of the assessment, and thus attacking the legality of the proceedings on the merits."

The plaintiffs, having invoked and had a hearing upon the merits of the proposed assessment and the protests directed thereto, and, having sought and been awarded an extension of time for the presentation of such protests, are thereby estopped to assert the want of jurisdiction of the commission to make the assessment by reason of insufficiency of the published notice.

The third ground, presented as Proposition No. 3, is as follows:

"Because the judgment complained of is contrary to law in that the Mayor and Board of Commissioners under the provisions of the City Charter, and the proceedings had in said alleged paving district, had no power to assess the costs of the storm sewers which constituted a portion of the contemplated improvements, to the various portions of the property affected."

The right of the City to provide drainage through the storm sewer in question as an incident of the paving project is not questioned. It is recognized that the properties of plaintiffs were benefited thereby and were liable to assessment for a portion of the cost thereof. And no contention is made that the amounts assessed against plaintiffs' properties are in excess of their proper proportion of the cost. The sole contention is that the city was without authority to make the assessment by the method used. Hence the only question here is whether the city was without jurisdiction to pursue the method adopted.

The method pursued is reflected in the testimony of witness William R. Wooten, assistant city engineer, as follows:

"A. Those sewers just described, together with the cost of all other storm sewers included in the construction proposed for this district are totaled and the total assessable area of all the property within the district are di-

vided into that total cost of storm sewer and a cost per square foot figure is arrived at. Then on the basis of this cost per square foot, the total cost is pro-rated over the entire district included in the assessment district."

Plaintiffs contend that "the cost of this sewer had to be charged to the blocks adjacent to the improvement, or within the assessable area, that is, within the quarter-block contiguous to the improvement." The contention is based upon the ground that, since the drainage is an incident to the paving, the cost of the sewer is to be assessed as the paving is assessed. This is required by article IX of the Charter to be assessed on the quarter-block method.

Defendants recognize that the quarter-block rule is prescribed by the Charter but contend that same is not exclusive because in reference thereto there is further provided (sec. 6, art. IX of Charter) as follows:

". . . Provided, that if the application of this rule would, in the opinion of the board, in particular cases, be unjust or unequal it shall be the duty of the Board to assess and apportion said costs in such proportion as it may deem just and equitable, having in view the special benefits in enhanced value to be received by each owner of such property, and the equities of such owners and the adjustment of such apportionment, so as to produce a substantial equality of benefits received by, and burdens imposed upon each owner."

This court has heretofore recognized that the quarter-block rule is not exclusive. In Grier v. City of Tulsa, 143 Okla. 244, 288 P. 957, we stated:

". . . Under some statutes, it is made mandatory on the municipality that property assessed for paving abut on the street paved. All statutes do not so provide. The charter of the city of Tulsa does not unqualifiedly so provide and the rule contended for is, therefore, without application."

The testimony is to the effect that apportionment of the sewer cost on the

basis of such rule would be unjust and unequal while the method pursued would accomplish a just and equitable apportionment of the costs. There is no evidence to the contrary. We deem it to be clear that under these circumstances the jurisdiction of the commission is not limited to what is termed the quarter-block method in assessing the cost of the sewer. This conclusion is sufficient to dispose of the contention but, in order to negative any idea that the departure from the prescribed method was arbitrary or capricious, we state that the course of the sewer does not parallel the paving on any street for which it affords drainage but is at right angles to several of the 'paved streets to each of which it affords direct drainage. We consider the situation to be abnormal and sufficient to justify the exercise of the legislative discretion granted.

The fourth and last ground, presented as Proposition No. 4, is as follows:

"Because the judgment complained of is contrary to law in that the Mayor and Board of Commissioners did not attempt to assess the costs of the paving in the alleged district to all of the assessable area within the district in accordance with the charter."

The properties of the plaintiffs, proposed to be assessed, are lots located in block 9. The project includes the paving of the streets on the four sides thereof. Block 9 is oblong, the greater length being east and west. It is a part of Adamson Heights Addition which was dedicated in 1938. At the same time there was dedicated to the public as a park one-half acre in the center of the block. The park area is likewise oblong and the outer lines thereof are parallel to and equidistant from the outer lines of the block, the distance being 140 feet. The length of the park corresponds to the width of five lots facing north and five facing south which extend to the north and south lines thereof. The plaintiffs own lots 18, 19 and 21, which are three of the five lots facing the street on the north of the block and abutting the park.

In May, 1947, the commissioners of the city of Tulsa adopted a resolution declaring said park, as well as another in block 4 of the addition, unfit for park purposes and declaring the city's refusal to accept same as such. Thereafter several owners of lots abutting the park areas, on behalf of themselves and others similarly situated, instituted in the district court of Tulsa county an action against the city of Tulsa and the heirs of Henry Adamson, deceased, who dedicated the addition, and therein sought to vacate the parks, and other relief. Said action is cause No. 76176 upon the docket of the court. Therein, on October 9, 1947, the court rendered judgment vacating the dedication of said park and decreeing that the portion thereof lying north of the center line thereof become the property of the owners of the lots on the north to the extent the area is embraced by extending the outer lines of the lots to the center line of the park, and made similar disposition of the portion that abutted lots facing south.

For the purpose of the proposed assessment each owner of a lot abutting on the park is mentioned as owner of that part of the park area which is added thereto by the extension of the outer lines of the lot to the center line of the park as provided by the decree, but the assessment is made severally, that is, a definite amount on the area of the lot and a definite amount on the added park area.

The fact that both the lot and the park area are assessable for the improvement is admitted and the amounts of the respective assessments thereon are not in question. The sole contention is that the title to that portion of the park area accorded to the lot is not vested in the owner of such lot and therefore not assessable to the owner of the lot. The alleged absence of title is predicated upon the contention that the judgment of the district court vacating the park and decreeing title thereto in the abutting lot owners is void upon the face of the record.

For the purpose of this review we deem it unnecessary to determine the effect of the judgment upon the question of title. To hold otherwise under the facts herein would be, in effect, to hold that the city is without jurisdiction to pave except where all titles involved are finally adjudicated.

Taking the contention with reference to the title as being true, the only error consists in the fact the plaintiffs are indicated in the assessments as owners of the park areas allocated to the lots abutting thereon. If the assessments upon such park areas imposed personal obligations upon the plaintiffs, they would be prejudiced thereby. But such assessments do not impose personal liability (City of Sapulpa v. Land, 101 Okla. 22, 223 P. 640; 35 A.L.R. 872; 44 C. J. 481-483, §2807.

The liability for the assessment rests upon, and only upon, the property upon which the assessment is made. The effect of the method of the assessment is to make definite the amounts of the respective assessments. If the lot owner owns the added park area and desires to protect his title to the platted lot and the added area, total assessment of both the lot and adjacent park area involves simply the matter of addition of the two assessments. If he does not own the added area he is under no obligation to pay the assessment thereon and his title to the lot is not burdened by the assessment upon the park area. We hold that, in contemplation of law, no litigable rights of the plaintiffs were impaired by the method employed in assessing the park area.

The judgment is affirmed.

DAVISON, C.J., and WELCH, CORN, LUTTRELL, HALLEY, JOHNSON, and O'NEAL, JJ., concur.